UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JOHNNY COBB

v.

JOEY MILLER,
TRADERS EDGE, INC.,
TRADER'SEDGELIVE.COM,
JAMES SMITH D/B/A THE JAMES
SMITH COMPANY AND/OR THE
COACHING COMPANY LLC,
MOHR & MOORE, LLC,
WILLIAM MOORE,
INTERNATIONAL COMMODITY ADVISORS,
GREGORY SEITZ, and
GUSTAVE WOEHR

CIVIL ACTION NO.

JURY TRIAL DEMANDED

## PLAINTIFF'S ORIGINAL COMPLAINT

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff Johnny Cobb ("Cobb"), who brings this complaint against defendants, **JOEY MILLER, TRADER'SEDGE LIVE.COM, TRADERS EDGE, INC., JAMES SMITH D/B/A THE JAMES SMITH COMPANY AND/OR THE COACHING COMPANY LLC, MOHR & MOORE, LLC, WILLIAM MOORE, INTERNATIONAL COMMODITY ADVISORS, GREGORY SEITZ AND GUSTAVE WOEHR,** and would respectfully show as follows.

### PARTIES

1.

Plaintiff is a citizen of the state of Texas who lives and resides in Deer Park, Texas.

362589.1

2.

Defendant Joey Miller is a citizen of the state of Oregon, who lives and resides in Hillsboro, Oregon. He may be served with process at 35724 SW Viewridge Lane, Hillsboro, Oregon, 97123.

3.

TradersEdgeLive.com is an Oregon entity with its principal place of business in Hillsboro, Oregon. It may be served with process at the residence of its principal, Joey Miller, 35724 SW Viewridge Lane, Hillsboro, Oregon, 97123.

4.

Traders Edge, Inc. is an Oregon Corporation with its principal place of business in Hillsboro, Oregon. It may be served with process on its registered agent, Joey Miller at 1223 NE Orenco Station Parkway, Suite 200, Hillsboro, Oregon, 97123.

5.

James Smith d/b/a The James Smith Company and/or the Coaching Company LLC is a citizen of the State of Florida, who lives and resides in Seminole County, Florida. The James Smith Company and the Coaching Company, L.L.C., were former Utah entities, a corporation and a limited liability company respectively, but were dissolved prior to the transaction or occurrence pled in this Complaint. Service is not requested on James Smith or his related entities at this time.

6.

Mohr & Moore is a Texas limited liability company, with its principal place of business in Frisco, Texas. It may be served with process at 9720 Coit Road, Suite 220-211, Plano, Texas 75025.

362589.1

7.

William Moore is a Texas resident, who lives and resides in Frisco, Texas. He may be served with process at 9720 Coit Road, Suite 220-211 Plano, Texas 75025.

8.

International Commodity Advisors is a Georgia Corporation with its principal place of business in Marietta, Georgia. It may be served with process on its registered agent, Gregory Seitz at 2850 Landing Way, Marietta, Georgia 30066.

9.

Gregory Seitz is a citizen of the State of Georgia, who lives and resides in Marietta, Georgia. He may be served with process at 2850 Landing Way, Marietta, Georgia 30066.

10.

Gustave Woehr is a citizen of the State of Texas, who lives and resides in Dallas, Texas. He may be served with process at 3380 Blackburn Street, Dallas, Texas 75204.

## **VENUE AND JURISDICTION**

11.

Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391 (b) because a substantial part of the events or omissions giving rise to Cobb's claims took place in the Southern District.

12.

Subject matter jurisdiction is proper under 28 U.S.C. §1331, as this matter involves violations of provisions of 7 U.S.C. 6b, 15 U.S.C. §77a, *et seq.*, 15 U.S.C. §78a, *et seq*, and/or 15 U.S.C. §80b-1, *et seq.* This Court has personal jurisdiction over the defendants as all do, or did,

business in this State and committed torts in whole or in part in this State; and several are residents of this State.

## FACTUAL BACKGROUND

13.

In late February 2010, Cobb attended the James Smith Financial Summit in Houston, Texas. Cobb paid $25,000 to attend the summit. At the summit, Cobb attended the Trader's Edge Cash Flow Workshop presented by Joey Miller and his companies, Trader's Edge, Inc. and Trader'sEdgeLive.com. James Smith's promotional and sponsorship materials promoted Miller as an expert in building perpetual cash flow streams and long term wealth. In attending the summit and Miller's workshop, Cobb relied on Smith's assurances that only the most qualified professionals were selected to present at the summit.

14.

On information and belief, neither James Smith, the James Smith Company, the Coaching Company, Joey Miller, TradersEdgeLive.com. nor Traders Edge, Inc., have ever registered as an investment advisor or commodities trading advisor.

15.

On information and belief, Miller had no substantial education or experience to support the promoted qualifications to professionally advise anyone concerning the trading of options.

16.

James Smith, the James Smith Company and/or the Coaching Company were negligent or grossly negligent in failing to discover the manifest lack of qualifications for Joey Miller to use the James Smith Summit as an entre to attract investors.

17.

The failure of James Smith, the James Smith Company and/or the Coaching Company, Miller, TradersEdgeLive.com, and/or Trader's Edge, Inc. to communicate to Cobb the complete lack of experience and qualifications to act as an investment advisor was an omission of material fact.

18.

James Smith, the James Smith Company and/or the Coaching Company conspired with Miller, TradersEdgeLive.com and/or Trader's Edge, Inc., whereby James Smith, the James Smith Company and/or the Coaching Company induced Cobb to believe that in return for a significant flat attendance fee, he would obtain valuable information. However, their failure to disclose the fact that 50% of any profits made by Cobb would be split between Miller and Mohr & Moore, William Moore, James Smith, the James Smith Company and/or the Coaching Company was an omission of material fact.

19.

Miller's specific cash flow workshop training materials guaranteed that 2%, 5% and even 10% monthly investment returns were highly probable if people followed his proven system of trading options on margin. Miller provided investment advice marketed by the James Smith Financial Summit and the summit promoted Miller as a seasoned stock trader and trainer with more than 10 years experience in the industry.

20.

During his workshop, Miller provided investment advice and training regarding an extremely complex and volatile credit spread options trading strategy commonly referred to as the "Iron Condor." Miller told Cobb that fewer than 2% of his principal was at risk in any trade,

5

362589.1

although there would be numerous trades within a given 24-hour period. Miller failed to communicate the significant risks and volatility associated with trading options on margin. This failure was an omission of material fact. Neither Miller nor his company were registered traders, brokers, broker dealers or licensed investment advisors. James Smith, the James Smith Company and/or the Coaching Company, Miller, TradersEdgeLive.com and Trader's Edge Inc.'s failure to disclose this was an omission of material fact.

21.

To induce Cobb's investment after completion of the workshop, Miller showed Cobb the purported accounts of two of his clients. One account allegedly went from $500,000 to 1.5 million in twenty months, and another went from 1 million to 3 million in the same time frame. On information and belief, these case histories were fictitious and constituted a misrepresentation of material fact.

22.

At his workshop, Miller guaranteed Cobb that his trading strategy was conservative but achieved an amazing return. Miller further guaranteed that his approach was the most conservative investing approach that continually produced a 50% to 60% annual return without a risk of loss of the principal invested. The joint representations of James Smith, the James Smith Company and/or the Coaching Company, Miller, TradersEdgeLive.com and Trader's Edge, Inc., were misrepresentations of material fact.

23.

Relying on these account results and the representations made by Miller during the cash flow workshop, Cobb executed a wire transfer in the amount of $500,000 to open an account with Forex Capital Markets, an online foreign-exchange broker. Cobb told Miller that he could

not lose this money, and Miller repeatedly guaranteed Cobb that his money was safe and would not be lost.

24.

Miller chose Mohr & Moore and/or William Moore as the Commodity Trading Advisor ("CTA") for Cobb's investment and provided for a performance fee of 50% of realized profits to be divided equally between Miller (and/or TradersEdgeLive.com and/or Trader's Edge, Inc.) and Mohr & Moore and/or William Moore.

25.

Miller, TradersEdgeLive.com and Trader's Edge, Inc., conspired with Mohr & Moore and/or William Moore to conceal from Cobb the level of risk that would be required for him to obtain the promised returns after paying an exorbitant commission to the conspirators. By splitting the fee, Mohr & Moore and/or William Moore vouched for Miller as a bona fide and qualified investment and/or commodities advisor, which was a misrepresentation of material fact.

26.

Mohr & Moore and/or William Moore knew or should have known of Miller's total lack of qualifications to act as an advisor with respect to securities or commodities investments, but nevertheless chose to associate themselves with him.

27.

Miller and Mohr & Moore and/or William Moore chose a computer program that on information and belief, neither of them understood, to make all trading decisions. Miller, Mohr & Moore and/or William Moore vouched for the quality of the computer program. Miller,

TradersEdgeLive.com, Trader's Edge, Inc., Mohr & Moore and/or William Moore concealed this material fact from Cobb.

28.

The conspirators, James Smith, the James Smith Company and/or the Coaching Company, Miller, TradersEdgeLive.com, Trader's Edge, Inc., Mohr & Moore and/or William Moore vouched for the quality of the trading decisions made automatically through strict adherence to the inner workings of the "black box" computer program developed by a convicted felon. The conspirators concealed and failed to disclose these material facts to Cobb.

29.

The joint enterprise of Miller, Mohr & Moore and/or William Moore executed their computer-generated trade decisions for Cobb by means of an account with Forex Capital Markets (FXCM), an online brokerage firm.

30.

In late May 2010, Miller advised Cobb that he should withdraw his money from his FXCM account and use it to fund an Open E Cry (another online broker service) account to take advantage of a great opportunity to trade bonds and United States Treasury Futures, investments that Miller assured Cobb were safer than the foreign exchange options. On June 10, 2010, after liquidating his FXCM account, Cobb acting on Miller and Mohr & Moore's advice, executed a $500,000 wire transfer to open an Open E Cry account.

31.

Miller, his related entities, Mohr & Moore and/or William Moore represented to Cobb that the computer program would also make decisions as to bonds and treasury futures.

32.

Just days later, Miller reported that he no longer employed Mohr & Moore as the CTA and that all accounts would be traded by International Commodity Advisors ("ICA"), a company owned by Greg Seitz and Gustave Woehr. Miller and ICA agreed to share the 50% performance fee charged to Cobb's account. Like the Mohr & Moore arrangement, the common enterprise of Miller and ICA would split 50% of the realized profits.

33.

Miller, TradersEdgeLive.com and Trader's Edge, Inc., conspired with ICA, Seitz and Woehr to conceal from Cobb the level of risk that would be required to achieve the promised returns after paying the exorbitant commissions.

34.

ICA knew or should have known of Miller's total lack of qualifications to act as an advisor with respect to securities or commodities investments, but nevertheless chose to associate themselves with him.

35.

Miller and ICA used the same computer program to make trading decisions as had Miller and Mohr & Moore, and on information and belief, neither Miller nor ICA understood that program. Regardless, Miller and ICA vouched for the quality of the computer program.

36.

Miller and ICA knew or should have known that the computer program was developed by a convicted felon, but failed to disclose this fact to Cobb. On information and belief, the developer of the computer program was not a registered investment advisor or commodities advisor.

37.

The conspirators, James Smith, the James Smith Company and/or the Coaching Company Miller, TradersEdgeLive.com, Trader's Edge, Inc., ICA, Seitz and Woehr vouched for the quality of the trading decisions made by the computer program.

38.

The joint enterprise of Miller, TradersEdgeLive.com, Trader's Edge, Inc., ICA, Seitz and Woehr executed their computer-generated trade decisions for Cobb by means of an account with Open E Cry, an online brokerage firm.

39.

In late June 2010, Cobb expressed significant concerns to Miller about his lack of understanding of his account statements and the appearance that he was continuing to lose money. However, Miller assured him that he was up $15,000 and things were positioned great for him. Miller was the conspirator whose responsibility it was to stay in personal contact with Cobb.

40.

Just five days later, Cobb received a call from Open E Cry which informed him that he had lost over $100,000. Just two hours later, Miller advised Cobb that the Open E Cry call was an error, and that he was in a great position.

41.

Miller, Seitz and Woehr all guaranteed Cobb that although he was seeing losses, he should not be alarmed because this was a result of additional investors joining the fund at different times. Despite his concerns and intentions to liquidate his Open E Cry account, Miller, Seitz and Woehr guaranteed Cobb that his money was safe and that he would not lose his money.

362589.1

Based on Miller, ICA, Seitz and Woehr's misrepresentations, Cobb left his money in the Open E Cry Account.

42.

Despite Miller, ICA, Seitz and Woehr's misrepresentations that the trading strategy was conservative, Cobb's account experienced incredibly dramatic decreases in his cash balance over a very short period of time. Cobb's Open E Cry account cash balance was $500,000 on June 11, 2010. In July, August and October 2010, Cobb's account cash balance fell by hundreds of thousands of dollars in a matter of days.

43.

In late summer 2010, after Cobb suffered significant losses, Miller promised Cobb that (i) he would return Cobb's principal; and (ii) Miller, Seitz and Woehr would add their own funds to Cobb's account and allow the account holders, including Cobb, to take all the profits until everyone was made 100% whole. Miller, Seitz and Woehr never put their own money into the account.

44.

As a result of the volatility of his account and his continual reliance on Miller's advice and representations, by November 2010, Cobb had lost his entire life savings, which was in excess of $500,000. Furthermore, the loss of his life savings caused Cobb significant pain and suffering, mental anguish and loss of enjoyment of life.

**VIOLATION OF RULE 10B-5 UNDER THE EXCHANGE ACT OF 1934**

45.

The foregoing paragraphs are incorporated by reference as though set forth fully herein.

Miller, TradersEdgeLive.com, Trader's Edge, Inc. ("the Miller Defendants"), in conjunction with Mohr & Moore, William Moore, ICA, Seitz and Woehr violated Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 (15 U.S.C § 78, et seq. and 17 CFR § 240 Rule 40.10b-5) by setting up discretionary trading accounts whereby the discretion as to investment decisions was done by a computer program, essentially a black box. The Miller Defendants, Mohr & Moore, William Moore, ICA, Seitz and Woehr misrepresented to Cobb the true risk associated with allowing the computer program--truly understood by none of them--to make investment decisions for them on Cobb's account. Each of them knew or should have known that the computer program took no material risk out of the transactions effected by them, and that the computer program was developed by a convicted felon. Each of them knew or should have known that they did not adequately understand the algorithm of the computer program and its workings in the situation Cobb found himself in. In all instances, the Miller Defendants, Mohr & Moore, William Moore, ICA, Seitz and Woehr failed to disclose this information to Cobb. Cobb relied on them and their misrepresentations and failure to disclose, causing him to lose his life's savings.

46.

Similarly, by scheduling the completely un-vetted Miller to speak under the auspices of James Smith, the James Smith Company and/or the Coaching Company at a high-priced seminar on investment strategies geared towards wealth building, the following persons misrepresented facts, failed fully to disclose the risks associated with the trading strategy which constituted an omission of material fact, and fraudulently induced Cobb to invest his money with the promise that he would not lose his money:

(i)    James Smith, the James Smith Company and/or the Coaching Company;

12

(ii)   Miller, Trader'sEdge Live.com, and Traders Edge, Inc.

James Smith, the James Smith Company and/or the Coaching Company sponsored the fraudulent activities of the Miller Defendants and gave them credibility and thus facilitated their obtaining Cobb as a new, unsuspecting target.

47.

James Smith, the James Smith Company and/or the Coaching Company and Miller are jointly and severally liable for the damages caused by the conduct of Miller.

## FRAUD - VIOLATION OF THE COMMODITIES EXCHANGE ACT

48.

The foregoing paragraphs are incorporated by reference as though set forth fully herein.

Through their continual and systematic misrepresentations of material facts, Miller, Trader'sEdgeLive.com, Trader's Edge, Inc., International Commodity Advisors, Seitz and Woehr violated Section 4b of the Commodities Exchange Act (7 U.S.C. § 1 et seq.) by intentionally misrepresenting the ability of the computer program to produce near risk-free results and by purposely failing to disclose to Cobb the risks and volatility associated with trading options on margin as well as the possibility that Cobb could lose his entire life savings. Miller, Trader'sEdgeLive.com, Trader's Edge, Inc., International Commodity Advisors, Seitz and Woehr knew that Cobb was ignorant of the full scope of the risks associated with trading United States Treasury Futures and conspired to induce Cobb's actions by failing to disclose these facts. This failure caused Cobb's loss of his life savings, significant pain and suffering, mental anguish and loss of enjoyment of life.

## DECEPTIVE TRADE PRACTICES

49.

The foregoing paragraphs are incorporated by reference as though set forth fully herein.

Through their continual and systematic misrepresentations and investment advice that the investments traded in the Open E Cry Account were safe and conservative and consistently obtained above average monthly returns, and that despite what appeared to be losses, Cobb was in a great position, Miller, Seitz and Woehr provided services which violated the Texas Deceptive Trade Practices Act (TEX. BUS. & COM. CODE §§ 17.41-.63), in that they constituted an express misrepresentation of material facts and were part of an unconscionable course of action. These continual violations were the producing cause of the loss of Cobb's life savings, significant pain and suffering, mental anguish and loss of enjoyment of life.

## NEGLIGENT MISREPRESENTATION

50.

The foregoing paragraphs are incorporated by reference as though set forth fully herein.

Miller, Trader'sEdgeLive.com, Trader's Edge, Inc., International Commodity Advisors, Seitz and Woehr failed to exercise reasonable care through their continual and systematic misrepresentations in the course of their business and guidance of Cobb's investment, a matter in which they had a pecuniary interest. This failure to exercise reasonable care in providing Cobb information was the proximate cause of Cobb's loss of his life savings, significant pain and suffering, mental anguish and loss of enjoyment of life.

## VICARIOUS LIABILITY

51.

The foregoing paragraphs are incorporated by reference as though set forth fully herein.

362589.1

Through their continual and systematic misrepresentations that caused Cobb's losses, Miller, Trader'sEdgeLive.com and Trader's Edge, Inc. were acting under the general authority of James Smith d/b/a the James Smith Company and/or the Coaching Company LLC in furtherance of the company's business with the objective of promoting the James Smith entities and the financial success seminars. James Smith d/b/a the James Smith Company and/or the Coaching Company LLC is liable for the negligent misrepresentations and conduct of Miller, Trader'sEdgeLive.com and Trader's Edge, Inc., and Cobb's resulting losses, significant pain and suffering, mental anguish and loss of enjoyment of life.

## BREACH OF FIDUCIARY DUTY

52.

The foregoing paragraphs are incorporated by reference as though set forth fully herein.

Because of the course of their dealings, a relationship of trust and confidence existed between Cobb and certain defendants. Cobb continually trusted and relied on the misrepresentations made by Miller, Trader'sEdgeLive.com and Trader's Edge, Inc. at the James Smith workshop, in subsequent emails assuring Cobb that he would not lose his life savings, and in periodic webinars in which Miller provided investment advice. Miller, Trader'sEdgeLive.com, Trader's Edge, Inc., International Commodity Advisors, Seitz and Woehr continually breached their fiduciary duty to Cobb through their continual and systematic misrepresentations, when they were fully aware of the fact that the investment strategy and advice carried significant risk. This breach proximately caused Cobb's loss of his life savings, significant pain and suffering, mental anguish and loss of enjoyment of life.

362589.1

## **FRAUD**

53.

The foregoing paragraphs are incorporated by reference as though set forth fully herein.

Through their continual and systematic misrepresentations, Miller, Trader'sEdgeLive.com, Trader's Edge, Inc., International Commodity Advisors, Seitz and Woehr failed to fully disclose to Cobb the risks and volatility associated with trading options on margin as well as the possibility that Cobb could lose his entire life savings. Miller, Trader'sEdgeLive.com, Trader's Edge, Inc., International Commodity Advisors, Seitz and Woehr misrepresented to Cobb the actual state of his account in order to hide the realized losses. Miller, Trader'sEdgeLive.com, Trader's Edge, Inc., International Commodity Advisors, Seitz and Woehr knew that Cobb was ignorant of the full scope of the risks associated with trading United States Treasury Futures and conspired to induce Cobb's actions by failing to disclose and misrepresenting these facts. In these actions, defendants made material misrepresentations to Cobb with knowledge of their falsity or made them recklessly without any knowledge of the truth and as a positive assertion; with the intention that Cobb should act on them; Cobb relied on those misrepresentations and thereby suffered injury. In addition, defendants failed to disclose to Cobb material facts within their knowledge; knew that Cobb was ignorant of those facts and did not have an opportunity equal to theirs to discover the truth; intended to induce Cobb to take the actions he did by failing to disclose those facts; and Cobb suffered injury as a result of acting without knowledge of the undisclosed facts. These actions caused Cobb's loss of his life savings, significant pain and suffering, mental anguish and loss of enjoyment of life.

362589.1

54.

As a result of the deceptive trade practices, negligent misrepresentation, breach of fiduciary duty and fraud, Miller, Trader'sEdgeLive.com, Trader's Edge, Inc., International Commodity Advisors Seitz and Woehr are jointly and severally liable for all losses suffered by Cobb, including but not limited to the complete loss of his life savings and all pain and suffering and loss of enjoyment of life suffered by Cobb as a result of the Miller's misconduct.

55.

James Smith, The James Smith Company, the Coaching Company, L.L.C., are jointly and severally liable for all losses suffered by Cobb as sponsors of Miller, Trader'sEdgeLive.com, and Trader's Edge, Inc.

## ATTORNEY'S FEES

56.

Cobb is entitled to his attorney's fees and costs of suit.

## JURY DEMAND

57.

Plaintiff requests a jury trial on all issues so triable.

WHEREFORE, Cobb prays that defendants be duly cited and required to appear and answer this Complaint and that the Court enter judgment in favor of Cobb and against defendants for all damages, costs, attorney's fees, interest and all further relief that the Court deems proper.

Respectfully submitted,

SMYSER KAPLAN & VESELKA, L.L.P.

_____
John Timothy Byrd
Attorney-in-Charge
State Bar No. 03559050
S.D. Texas Bar No. 8730
700 Louisiana, Suite 2300
Houston, Texas 77002
Telephone:    (713) 221-2300
Facsimile:    (713) 221-2320
Email:        tbyrd@skv.com

And

JACKSON & JACKSON, P.L.L.C.

J. Konrad Jackson
Louisiana Bar Roll# 26055 TA
Robert G. Jackson
Louisiana Bar Roll# 7200
Matthew A. Moeller
Louisiana Bar Roll# 29991
825 Baronne Street
New Orleans, LA 70113
Telephone:    (504) 525-5090
Facsimile:    (504) 568-0025
Email:        konrad@jlaw.net

**ATTORNEYS FOR PLAINTIFF
JOHNNY COBB**

362589.1